UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JEFFREY SCOTT PHILLIPS, | ) | 5:13CV693 |
| | ) | |
| Petitioner | ) | |
| | ) | JUDGE JEFFREY J. HELMICK |
| v. | ) | (Mag. Judge Kenneth S. McHargh) |
| | ) | |
| CHRISTOPHER LAROSE, | ) | |
| WARDEN, | ) | |
| | ) | REPORT AND |
| | ) | RECOMMENDATION |
| Respondent | ) | |
| | ) | |

McHARGH, MAG. JUDGE

This 28 U.S.C. § 2254 petition is before the magistrate judge pursuant to

Local Rule 72.2(b)(2).  Before the Court is the petition of Jeffrey Scott Phillips

("Phillips") for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.  The

petitioner is in the custody of the Ohio Department of Rehabilitation and Correction

pursuant to journal entry of sentence in the case of *State of Ohio v. Phillips*, Case

No. 2010-CR-0772 (Stark County Nov. 15, 2010).  (Doc. 13-1, Ex. 1.)  For the

following reasons, the magistrate judge recommends that the petition be DENIED.

Phillips has filed a pro se petition for a writ of habeas corpus, arising out of

his 2010 convictions for aggravated murder, aggravated robbery, aggravated

burglary, tampering with evidence, and arson in the Stark County (Ohio) Court of

Common Pleas.  In his amended petition, Phillips raises the following five grounds

for relief:

1.  Petitioner's constitutional rights were violated when the petitioner's counsel failed to object to the introduction of hearsay in the form of an FBI generated cell tower analysis and report which was received and used by the investigating agency as a foundation for prejudicial charts and testimony which was introduced at trial to show the vicinity of cell phone towers.

2.  The trial court violated the petitioner's constitutional rights when it permitted the introduction of a letter to an unrelated third party, which included otherwise inadmissible other acts of evidence.

3.  The trial court's decision to allow the introduction of gruesome crime scene photos and photos of the autopsy were highly inflammatory and highly prejudicial towards this petitioner.

4.  The jury's verdict is against the sufficiency and manifest weight of the evidence presented at trial.

5.  The trial court abused its discretion in failing to grant petitioner's motion to vacate fines and costs.

(Doc. 10-3 at 3-7.)

The respondent, Warden Christopher LaRose ("Respondent"), has filed a

return of writ.  (Doc. 13.)  Phillips has filed a traverse.  (Doc. 26-1.)  And

Respondent has filed a sur-reply.  (Doc. 28.)

## I. INTRODUCTION

The Ohio Court of Appeals, in reviewing Phillips' convictions on direct

appeal, provided the following factual account of Phillips' crimes:

{¶ 2} On March 11, 2010, James Leeson, a sixty-six-year-old retired firefighter, was found beaten and stabbed to death in the basement of his house on East College Street in Alliance, Ohio. A Stark County

2

Sheriff's Deputy, Michael Leary, assisted by one of Leeson's neighbors, discovered the body as part of the deputy's follow-up of the discovery of Leeson's automobile, a 2001 Chrysler Sebring convertible. The car had been discovered engulfed in flames that morning in nearby Lexington Township. The Alliance Police Department was thereupon contacted to investigate the scene.

{¶ 3} Alliance detectives discovered, among other things, that the entertainment center areas in the master bedroom and living room were missing their respective flat-screen television sets. A ceremonial sword with blood stains was in the basement. The bedroom was also found ransacked. The detectives also noticed extensive areas of spilled ammonia and bleach at the scene, including amounts on and around Leeson's body. There were no signs of forced entry on the outside doors. However, some of the neighbors reported they had heard a loud banging around 11:00 or 11:30 PM on March 10, sounding like a storm door being caught in the wind. One neighbor, Jennifer Hall, saw Leeson's car coming out of his driveway, traveling fast. She could not see the driver.

{¶ 4} On the morning of March 11, 2010, at about 6:00 AM, appellant made a cell phone call to Waylon Hillman, a local drug dealer, asking him to look at two television sets appellant wanted to exchange for some crack cocaine. A meeting was arranged at a parking lot in Alliance. Appellant arrived alone, driving a "nice car," a convertible. Tr. at 262. Hillman came to the parking lot with his girlfriend, Kristen Carli. The three went to Hillman's grandmother's home to plug in and check the operability of the TVs. Appellant thereupon exchanged the TVs with Hillman for about $200.00 worth of crack cocaine.

{¶ 5} Carli then got in her car and followed appellant, who drove Leeson's car. She later watched as he set the interior of Leeson's convertible on fire.

{¶ 6} At Hillman's request, Carli thereafter took the TVs to an Alliance pawn shop in order to get some cash. The pawn shop accepted one of the sets, but rejected the other because the color picture was unsatisfactory. Hillman thereafter sold the second TV to a third party. Police detectives later traced the TVs to those taken from Leeson's home.

{¶ 7} Police investigation also revealed that a cell phone registered to appellant was used to make calls to Waylon Hillman on March 10,

3

2010 at 10:52 PM and 11:52 PM. Cell tower analysis indicated that
said cell phone was within 2.8 miles of Leeson's house at those times.
Another call was made on appellant's cell phone at 6:52 AM on March
11, 2010.

{¶ 8} The detectives also interviewed Tammie Goodwin, Leeson's friend
and occasional paramour. Goodwin is married to Keith Smith. She was
also living with appellant at the time of Leeson's killing. Goodwin told
police she had tried to contact Leeson on March 11, 2010, but got no
answer on his phone.

{¶ 9} The Stark County Coroner conducted an autopsy of Leeson's
body. It indicated multiple signs of blunt force trauma to Leeson's
neck, face and forehead. There were also six stab wounds, four of
which were in Leeson's chest, and chemical burns stemming from
liquid bleach that had been poured on the body. The coroner listed the
cause of death as a homicide caused by blunt head trauma and
multiple stab wounds.

*State v. Phillips*, No. 2010 CA 00338, 2011-Ohio-6569, 2011 WL 6655887, at **1-2

(Ohio Ct. App. Dec. 19, 2011).  (Doc. 13-1, Ex. 2 at 13-15.)

## II.  PROCEDURAL BACKGROUND

A.    **Indictment and Conviction**

On June 3, 2010, the Stark County Grand Jury issued an indictment

charging Phillips with one count of aggravated murder (Count 1) with two death

penalty specifications; one count of aggravated robbery (Count 2); one count of

aggravated burglary (Count  3); one count of tampering with evidence (Count 4);

and one count of arson (Count 5).  (Doc. 13-1, Ex. 3.)  On June 11, 2010, the State

moved to amend the tampering with evidence charge to include recklessness as a

sufficient mental state, which the court granted.  (Doc. 13-1, Exs. 6, 7.)   Phillips

entered a plea of not guilty to all charges and specifications.  (Doc. 13-1, Ex. 1.)

4

Prior to trial, Phillips filed several motions in limine. (Doc. 13-1, Exs. 8, 11, 14, 17.) The trial court denied each of them as premature except a motion in limine seeking to exclude victim-impact evidence. (Doc. 31-1, Exs. 10, 13, 16, 19.)

A jury trial commenced on October 19, 2010. (Doc. 13-1, Ex. 1 at 6.) On October 29, 2010, the jury found Phillips guilty of all charges and specifications. (*Id.*) The mitigation phase of Phillips' trial as to the aggravated murder charge began on November 3, 2010. (*Id.*) The jury returned its verdict the next day, November 4, 2010, finding that the aggravating circumstances did not outweigh the mitigating factors by proof beyond a reasonable doubt and imposing a term of life imprisonment without parole eligibility. (*Id.* at 6-7.) That same day, the trial court sentenced Phillips to prison terms of life without parole eligibility for aggravated murder; ten years for aggravated robbery; ten years for aggravated burglary; five years for tampering with evidence; and eighteen months for arson. (*Id.* at 8.) The court further ordered that Phillips serve counts one through four consecutively with each other, but concurrent with count five. (*Id.*) It also ordered him to pay the costs of prosecution. (*Id.* at 11.)

## B.  Direct Appeal

On December 19, 2010, Phillips, through new counsel, filed a timely notice of appeal with the Fifth District Court of Appeals. (Doc. 13-1, Ex. 21.) In his appellate brief, he raised the following assignments of error:

1.  Appellant's counsel were ineffective in failing to object to the introduction of hearsay in the form of an FBI generated cell tower analysis and report which was received by the

investigating agency and used by the investigating agency as a foundation for prejudicial charts and testimony and which was also introduced at trial to show the vicinity of cell phone signals to local cell phone towers.

2.  The trial court abused its discretion in permitting the introduction of a letter to an unrelated third party which included otherwise inadmissible other acts evidence.

3.  The trial court abused its discretion in admitting the gruesome photos of the crime scene and autopsy which were inflammatory and highly prejudicial.

4.  The jury's verdict is against the sufficiency and manifest weight of the evidence presented at trial.

5.  The trial court abused its discretion in failing to grant Appellant's motion to vacate fines and costs.

(Doc. 13-1, Ex. 22.)

On December 19, 2011, the state appellate court overruled Phillips' assignments of error and affirmed the trial court judgment.  *Phillips*, 2011 WL 6655887, at *9.  (Doc. 31-1, Ex. 2 at 29.)

Phillips filed a timely pro se notice of appeal in the Ohio Supreme Court on January 25, 2012.  (Doc. 13-1, Ex. 24.)  In his memorandum in support of jurisdiction, Phillips asserted the following propositions of law:

1.  Appellant's counsel were ineffective in failing to object to the introduction of hearsay in the form of an FBI generated cell tower analysis and report which was received by the investigating agency and used by the investigating agency as a foundation for prejudicial charts and testimony and which was also introduced at trial to show the vicinity of cell phone signals to local cell phone towers in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 & 16 of the Ohio Constitution.

2. The trial court abused its discretion in permitting the introduction of a letter to an unrelated third party which included otherwise inadmissible other acts evidence in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 & 16 of the Ohio Constitution.

3. The trial court abused its discretion in admitting the gruesome photos of the crime scene and autopsy which were inflammatory and highly prejudicial in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 & 16 of the Ohio Constitution.

4. The jury's verdict is against the sufficiency and manifest weight of the evidence presented at trial in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 & 16 of the Ohio Constitution.

5. The trial court abused its discretion in failing to grant Appellant's motion to vacate fines and costs in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 & 16 of the Ohio Constitution.

(Doc. 13-1, Ex. 25.)

The Ohio Supreme Court appointed new counsel for Phillips, and through counsel, Phillips filed an amended notice of appeal on February 2, 2012. (Doc. 13-1, Ex. 26.) In his amended memorandum in support of jurisdiction, Phillips asserted the following propositions of law:

1. If a fact admitted at trial is based on out-of-court human information gathering and computer analysis, the Confrontation Clause demands that those witnesses that did the information gathering and computer analysis testify at trial.

   A. Mr. Phillips' trial counsel was ineffective for failing to demand that the F.B.I. agent or representative testify at trial.

      B.    This Court should accept Mr. Phillips' First Proposition of Law and stay the briefing pending a decision in *State v. Hood*, 2010-2260.

2.    A person may not be convicted of aggravated murder, aggravated robbery, aggravated burglary, or tampering with evidence unless the State presents evidence on each element of each offense.

3.    All aspects of the court's judgment must be orally imposed at the sentencing hearing, including but not limited to, the imposition of any sentence, fines, and court costs.

(Doc. 13-1, Ex. 27.)

The Ohio Supreme Court denied jurisdiction on April 18, 2012.  (Doc. 13-1, Ex. 29.)

**D.**    **Post-Conviction Proceedings**

Meanwhile, on September 12, 2011, Phillips filed a pro se petition to vacate, or set aside, the judgment of conviction in the trial court.  (Doc. 13-1, Ex. 22.)  He raised the following claims:

1.    Constitutional error in this case[;] I was deprived my [S]ixth [A]mendment right to effective counsel.

2.    Sixth [A]mendment violation[;] [i]neffectiveness of counsel.

(*Id.* at 240-41.)  The State filed a response to the petition and motion to dismiss and motion for summary judgment.  (Doc. 13-1, Ex. 31.)

Before the court ruled on his petition, Phillips filed a notice of appeal in the Fifth District Court of Appeals on December 16, 2011.  (Doc. 13-1, Ex. 32.)  The trial court then issued an order stating that it was without jurisdiction to rule on Phillips' petition because it was being appealed.  (Doc. 13-1, Ex. 33.)  On January 9,

8

2012, Phillips filed a pro se motion in the state appellate court to withdraw his December 16, 2011, notice of appeal, which the court granted.  (Doc. 13-1, Exs. 34, 35.)

On July 11, 2012, the trial court dismissed the petition and granted the State summary judgment.  It ruled that the claims were barred under the doctrine of res judicata and that "Phillips [had] failed to demonstrate that there was denial or infringement upon his Constitutional rights so as to warrant the relief sought." (Doc. 13-1, Ex. 36 at 278-79.)

On December 14, 2012, Phillips filed an untimely pro se motion for relief from judgment under Ohio R. Civ. P. 60(B).  (Doc. 13-1, Ex. 37.)  The State filed a motion to dismiss and motion for summary judgment in response.  (Doc. 13-1, Ex. 38.)  Phillips filed a "Demand for Findings of Fact and Conclusions of Law" on May 20, 2013.  (Doc. 13-1, Ex. 39.)  The State opposed it.  (Doc. 13-1, Ex. 40.)  Phillips then filed a "Motion for Findings of Fact and Conclusions of Law" on June 24, 2013. (Doc. 31-1, Ex. 41.)

On July 12, 2013, the trial court converted Phillips' motion for relief from judgment (Ex. 37) into a motion for post-conviction relief and dismissed it as untimely and barred by the doctrine of res judicata.  (Doc. 13-1, Ex. 42.)  That same day, the court also dismissed Phillips' motions for findings of fact and conclusions of law as moot.  (Doc. 13-1, Ex. 43.)

On August 9, 2013, Phillips filed a pro se notice of appeal of the trial court's judgment. (Doc. 13-1, Ex. 44.) In his appellate brief, Phillips raised the following assignment of error:

> The court of common pleas abused its discretion when it failed and/or refused to provide findings of fact and conclusions of law in support of its decision to deny the post-conviction relief.

(Doc. 13-1, Ex. 45.) The appellate court denied Phillip's appeal as untimely on February 18, 2014. (Doc. 13-1, Ex. 48.)

On March 17, 2014, Phillips filed another untimely pro se notice of appeal of the trial court's July 12, 2013, judgment in the state appellate court. (Doc. 13-1, Ex. 49.) He also filed a motion for leave to appeal that day. (Doc. 13-1, Ex. 50.) On April 15, 2014, the state appellate court denied Phillips' motion for delayed appeal because a delayed appeal "is not available in an appeal of a post conviction relief determination." (Doc. 13-1, Ex. 52.)

Phillips did not appeal that decision to the Ohio Supreme Court.

## E.  Federal Habeas Corpus Petition

Phillips filed a pro se petition for writ of habeas corpus in this Court on March 29, 2013, asserting five grounds for relief. (Doc. 1.) Phillips also filed that day a motion for a stay pending exhaustion of his state-court post-conviction petition. (Doc. 2.) On May 6, 2013, this Court dismissed Phillips' habeas petition without prejudice pending exhaustion of Phillips' state-court remedies, and authorized Phillips to "file a Motion to Reopen in this case, with equitable tolling of

the statute of limitations for the period during which his postconviction and related

appeals are pending, when his state court remedies are exhausted." (Doc. 4.)

On August 12, 2014, Phillips filed a motion to reopen and to amend his

original petition by adding three new grounds for relief. (Doc. 7.) The Court

granted Phillips' motion on September 9, 2014. (Doc. 8.)

Phillips, pro se, filed his amended habeas petition on November 6, 2014. (Doc.

10.) Phillips' amended petition raises the following five grounds for relief:

1. Petitioner's constitutional rights were violated when the petitioner's counsel failed to object to the introduction of hearsay in the form of an FBI generated cell tower analysis and report which was received and used by the investigating agency as a foundation for prejudicial charts and testimony which was introduced at trial to show the vicinity of cell phone towers.

2. The trial court violated the petitioner's constitutional rights when it permitted the introduction of a letter to an unrelated third party, which included otherwise inadmissible other acts of evidence.

3. The trial court's decision to allow the introduction of gruesome crime scene photos and photos of the autopsy were highly inflammatory and highly prejudicial towards this petitioner.

4. The jury's verdict is against the sufficiency and manifest weight of the evidence presented at trial.

5. The trial court abused its discretion in failing to grant petitioner's motion to vacate fines and costs.

(Doc. 10-3 at 3-7.)

The petition includes three "attachments." "Attachment A" is entitled

"Assignments of Error Presented in the Fifth District Court of Appeals." (Doc. 10-

1.) Phillips references it in his amended petition in the section describing his direct

11

appeal in the state appellate court. (Doc. 10 at 2.) "Attachment B" is entitled "Propositions of Law Presented to the Ohio Supreme Court on Direct Appeal." (Doc. 10-2.) Phillips references this document in his amended petition in the section describing his direct appeal in the Ohio Supreme Court. (Doc. 10 at 3.) In both of these "attachments," Phillips adds the three grounds that were the subject of his motion to amend. (*See* Doc. 10-1 at 1-2; Doc. 10-2 at 2.) "Attachment C" is entitled "Omnibus Statement in Support of Petition." (Doc. 10-3.) This "attachment" provides a brief factual and procedural history of Phillips' case and a "Summary for Grounds for Relief," stating the five grounds listed above along with supporting arguments for each. (*Id.*) Phillips revised this "attachment" for his amended petition, but he did not add the three additional grounds stated in his motion to amend.

Respondent filed a return of writ on January 17, 2015, addressing the five grounds specified in Phillips' amended petition as well as the three claims from his motion to amend. (Doc. 13.)

In the meantime, on November 25, 2014, Phillips filed a motion requesting trial transcripts. (Doc. 12.) After requesting and receiving permission to respond to Phillips' motion, Respondent opposed the motion. (Docs. 11, 14-16.) The Court denied the motion, but sua sponte granted Phillips additional time in which to file his traverse, because it was reasonable for Phillips to wait to file his traverse until the Court had ruled on the motion. (Doc. 17.) On February 23, 2015, Phillips moved for reconsideration of his motion for trial transcripts. (Doc. 18.) He also

12

moved that day for additional time to prepare his traverse.  (Doc. 19.)  On March 6, 2015, the Court granted Phillips' motion for reconsideration; ordered Respondent to provide Phillips with the trial transcript as well as any other exhibits attached to the return of writ that had not already been provided to him; and granted Phillips additional time in which to file his traverse.  (Doc. 20.)  Respondent filed a notice of compliance with the Court's order on March 9, 2015.  (Doc. 21.)

On March 25, 2015, Phillips filed a motion with the Court, asking it to order Respondent to provide the trial transcripts and to "answer three (3) issues that were omitted from the Respondent's Return of Writ."  (Doc. 22.)  Phillips claimed that although he did not include the three grounds for relief that were the subject of his motion to amend, "[t]hese grounds were clearly included in the Motion to Reopen . . ., were the reason for the granting of the reopening his habeas, and were listed in the Amended Federal Habeas Corpus Petition, referred to and included as Attachment A . . . and Attachment B" . . . ."  (*Id.* at 2.)  Respondent opposed Phillips' motion on both grounds.  (Doc. 23.)  He stated that he did comply with the order regarding the transcripts, and Phillips did not properly raise the additional three claims in his amended petition, so Respondent should not be compelled to more fully address them.  (*Id.* at 2-3.)  Phillips then filed a "Motion for Leave or, in the Alternative, a Motion for an Order to Allow Petitioner to File a Reply to the Respondent Warden's Response in Opposition to Motion for an Order."  (Doc. 24.)  On September 14, 2015, the Court denied Phillips' motions, ruling that it would not order further production of documents, and it would not address the issue of what

claims were presented in the amended petition until briefing was completed.  (*Id.* at 3-4.)

Phillips filed his traverse on October 13, 2015.  (Doc. 26-1.)  He addressed only the five grounds for relief clearly identified in his amended petition.[1]  (*Id.* at 11, 24, 31, 38.)  After requesting and receiving additional time, Respondent filed a sur-reply on November 4, 2015.  (Doc. 28.)

## III.  HABEAS CORPUS REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, which provides the standard of review that federal courts must apply when considering applications for a writ of habeas corpus. Under the AEDPA, federal courts have limited power to issue a writ of habeas corpus with respect to any claim which was adjudicated on the merits by a state court.  The Supreme Court, in *Williams v. Taylor*, provided the following guidance:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied -- the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct

---

[1]  Because Phillips did not properly raise the three additional claims stated in his motion to amend in his amended habeas petition, and did not address them in his traverse, Phillips has abandoned the claims and the Court will not review them.

14

> governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2002). *See also Lorraine v. Coyle*, 291 F.3d 416, 421-422 (6th Cir. 2002), *cert. denied*, 538 U.S. 947 (2003).

A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." *Williams*, 529 U.S. at 405. *See also Price v. Vincent*, 538 U.S. 634, 640 (2003).

A state court decision is not unreasonable simply because the federal court considers the state decision to be erroneous or incorrect. Rather, the federal court must determine that the state court decision is an objectively unreasonable application of federal law. *Williams*, 529 U.S. at 410-12; *Lorraine*, 291 F.3d at 422.

Phillips has filed his petition pro se. The pleadings of a petition drafted by a pro se litigant are held to less stringent standards than formal pleadings drafted by lawyers, and will be liberally construed. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001) (citing *Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972) (per curiam)). Other than that, no special treatment is afforded litigants who decide to proceed pro se. *McNeil v. United States*, 508 U.S. 106, 113 (1993) (strict adherence to procedural requirements); *Jourdan v. Jabe*, 951 F.2d 108 (6th Cir. 1991); *Brock v. Hendershott*, 840 F.2d 339, 343 (6th Cir. 1988).

## IV. PROCEDURAL DEFAULT

A habeas claim may be procedurally defaulted in two distinct ways. First, by failing to comply with state procedural rules. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)). Second, by failing to raise a claim in state court, and to pursue the claim through the state's ordinary review process. *Williams*, 460 F.3d at 806 (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)).

When a petitioner "has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

A habeas petitioner cannot obtain relief unless he has completely exhausted his available state remedies. *Coleman,* 501 U.S. at 731; *Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001) (citing *Coleman v. Mitchell*, 244 F.3d 533, 538 (6th Cir.), *cert. denied*, 534 U.S. 977 (2001)). To satisfy the exhaustion requirement, a habeas petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845. The exhaustion requirement is satisfied when the highest court in the state has been given a full and fair opportunity to rule on the petitioner's claims. *Rust v. Zent*, 17 F.3d 155,

16

160 (6th Cir. 1994) (citing *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990)). Where the petitioner failed to present a claim in state court, a habeas court may deem that claim procedurally defaulted because the Ohio state courts would no longer entertain the claim. *Adams v. Bradshaw*, 484 F. Supp. 2d 753, 769 (N.D. Ohio 2007) (citing *Buell*, 274 F.3d at 349).

### Grounds Two and Three: *Trial-Court Error / Evidentiary Rulings*

In his second and third grounds for relief, Phillips challenges the trial court's rulings on evidentiary issues. (Doc. 10-3 at 24-34.) Specifically, he claims the trial court should not have permitted the State's introduction of gruesome crime scene and autopsy photographs and a letter he argues contained "other acts" evidence. (*Id.*) Respondent contends these claims are procedurally defaulted because they were not fairly presented to state courts. (Doc. 13 at 32-33.)

Phillips raised these evidentiary claims in the state appellate court as his second and third assignments of error. (*See* Doc. 13-1, Ex. 22 at 97-103.) But he did not cite in his appellate brief any federal constitutional law, or any case, state or federal, that might have alerted the court to the alleged federal nature of the claims. Nor did he employ any language that might have indicated the assertion of federal constitutional claims. The claims are procedurally defaulted. *See Baldwin*, 541 U.S. at 32 ("[O]rdinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so.").

17

Moreover, Phillips did not appeal the court of appeals' decision denying these claims to the Ohio Supreme Court. (*See* Doc. 13-1, Ex. 27.)[2] Therefore, because he did not pursue the claims through Ohio's "ordinary appellate review procedures" to the highest state court, the claims are procedurally defaulted on that basis as well. *O'Sullivan*, 526 U.S. at 848. *See also Engle*, 456 U.S. at 125 n.28 (where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review).

Furthermore, Phillips does not offer any argument regarding either the cause for, or prejudice resulting from, his procedural default of the claims. Nor does he contend that he is actually innocent to excuse his procedural default. (*See* Doc. 26-1 at 28-29.)

## V. COGNIZABILITY

Respondent argues that Phillips' grounds two, three, part of four, and five must be denied because they are not cognizable in habeas corpus. (Doc. 13 at 33, 36, 42.)

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or

---

[2] The amended jurisdictional memorandum Phillips filed through appointed counsel superceded Phillips' original, pro se jurisdictional memorandum. *See, e.g., Wrinkle v. Trabert*, 174 Ohio St. 233, 238 (Ohio 1963).

treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (citing 28

U.S.C. § 2241).  *See also Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal

habeas corpus relief does not lie for errors of state law."); *Engle v. Isaac,* 456 U.S.

107, 121 n.21 (1982) ("We have long recognized that a 'mere error of state law' is not

a denial of due process." (citation omitted)).

## A.  Grounds Two and Three: *Trial-Court Error / Evidentiary Rulings*

As noted above, Phillips argues in his second and third grounds for relief that

the trial court erroneously permitted the introduction of a letter he alleges

contained "other acts" evidence and of gruesome crime scene and autopsy

photographs.  (Doc. 10-3 at 24-34.)

Generally, "alleged errors in evidentiary rulings by state courts are not

cognizable in federal habeas review." *Moreland v. Bradshaw*, 699 F.3d 908, 923

(6th Cir. 2012).  Habeas courts presume that the Ohio state courts correctly

interpret Ohio evidence law in their evidentiary rulings.  *Small v. Brigano*, No.

04-3328, 2005 WL 1432898, at *5 (6th Cir. June 17, 2005).  However, state-court

evidentiary rulings may "rise to the level of due process violations [if] they 'offend[]

some principle of justice so rooted in the traditions and conscience of our people as

to be ranked as fundamental.'" *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir.

2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)).  They must be "so

egregious that [they] result in a denial of fundamental fairness." *Bugh v. Mitchell*,

329 F.3d 496, 512 (6th Cir. 2003).  But "courts 'have defined the category of

infractions that violate 'fundamental fairness' very narrowly.'" *Id.* (quoting *Wright v. Dallman*, 999 F.2d 174, 178 (6th Cir. 1993)).

Thus, to the extent Phillips argues the challenged evidentiary rulings violate state law, such as the Ohio Rules of Evidence, the claims are not cognizable. The only issue before this Court is whether the challenged rulings resulted in a denial of fundamental fairness. They do not.

The letter about which Phillips complains is one that he wrote on March 9, 2010, the day before the murder, to Mike Stillion, a prison inmate and former boyfriend of Phillips' girlfriend, Tammie Goodwin. The letter stated:

> So once again, I apologize and I'd say I'm sorry but I'd be lying so that I won't say. I have known Tammie since she was nine years old, Mike. I truly love her and I will not let her go and by the time you get out she and I will be married. And I have informed a person today we are going to get this dissolution done fast. Yes, the yellow bellied maggot is out trying to proclaim his love for her but that's a done deal. I met him face to face and explained to him he's done. Tammie is my girl and mine only. So Mr. Michael David Stillion, I do apologize if your feelings are hurt, but please have faith and believe Tamie does love me and she will not be coming back to you after your release. I just felt you should know and I don't want you getting out and thinking she's going to be with you because she's not. And don't worry about he don't want none of this. I'm one of the baddest motherfuckers with my hands you'll ever know. I'm gone.

*Phillips*, 2011 WL 6655887, at *5.

Phillips asserts that the letter was highly prejudicial but not relevant to the State's case, as it was written to a person not involved in the crime and was never actually sent. (Doc. 26-1 at 29-32.) Moreover, he argues, Goodwin's testimony refuted the State's contention that the letter supported its theory that Phillips was

motivated to kill Leeson out of jealousy.  (*Id.* at 31.)  Phillips points out that

Goodwin testified that Phillips knew about her relationship with Leeson, although

he was not aware of the sexual aspect of the relationship, and he generally was

"okay" with her "seeing other guys."  (*Id.*)

> The state appellate court rejected the latter argument, finding:
>
> [T]he State's theory of the case was two-fold; i.e., the State proposed that appellant killed Leeson both as a means of getting items to sell for crack cocaine and a means of eliminating one of Tammie Goodwin's romantic partners. Upon review, particularly where the trial court gave a limiting instruction that the jury was to consider appellant's letter only for the purpose of determining motive, we find no abuse of discretion in the court's allowance of said letter.

*Phillips*, 2011 WL 6655887, at *5.  The state court further concluded that the letter

was "an admissible non-hearsay statement as an admission by a party-opponent

under Evid. R. 801(D)(2) . . . ."  *Id.*

This Court agrees with the state appellate court.  Regardless of whom the

letter was directed to or whether or not it was sent, Phillips does not dispute that

he wrote it.  In fact, the letter was strong evidence of Phillips' feelings toward

Goodwin at the time of the murder, and his motive to harm Leeson because he was

jealous of her relationship with him.  Furthermore, as the state court noted, the

trial court instructed the jury to consider the letter only to determine motive.  The

letter's admission, therefore, did not violate the fundamental fairness of Phillips'

trial.

The same is true of the trial court's admission of the crime scene and autopsy

photographs.  The state appellate court aptly reasoned:

21

{¶ 39} . . . "The real question is whether the probative value of such photographs is outweighed by the danger of prejudice to the defendant." . . .

{¶ 40} In the case sub judice, the trial court admitted twenty-three photographs out of 176 provided by the coroner, Dr. Murthy. Each of these depicted the different stabbing and blunt force injuries to Leeson, and each was explained by the coroner as his testimony progressed. In addition, a crime scene photograph showing some of the blood around the body was shown to the jury.

{¶ 41} Under the circumstances in this case, where appellant denied being anywhere near Leeson's home on the night of the murder, it was relevant for the jury to ascertain the nature of the intent of appellant's acts against Leeson, the specifics of Leeson's injuries, and the medical impact of the beating Leeson received from the perpetrator.

*Phillips*, 2011 WL 6655887, at *6.

Habeas courts routinely have denied claims that the admission of "gruesome" photographs of victims or crime scenes resulted in the denial of fundamental fairness. *See, e.g., Biros v. Bagley*, 422 F.3d 379, 391 (6th Cir. 2005) (admission of gruesome photographs depicting victim's body did not deprive petitioner of fair trial); *Cooey v. Coyle*, 289 F.3d 882, 893-94 (6th Cir. 2002) (admission of gruesome photographs not cognizable on habeas); *Skrzycki v. Lafler*, 347 F. Supp. 2d 448, 455 (E.D. Mich. 2004) ("The admission of relevant photographs of a crime scene or a victim, even if gruesome, does not deprive a criminal defendant of a fair trial.").

The photographs of which Phillips complains were limited in number and relevant to the prosecution's case. Accordingly, Phillips has not demonstrated that their introduction rendered his trial fundamentally unfair.

22

B. **Ground Four:** *Manifest Weight of the Evidence*

Phillips' fourth ground for relief alleges that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence.  (Doc. 10-3 at 6.)  It is well-settled, however, that claims regarding the manifest weight of the evidence are based on state law, which federal habeas courts may not review.  *See, e.g., Walker v. Engle*, 703 F.2d 959, 969 (6th Cir. 1983) (The Due Process Clause does not provide relief for defendants whose convictions are against the manifest weight of the evidence, but only for those convicted without sufficient proof to allow a finding of guilt beyond a reasonable doubt).  The Court, therefore, will not address this sub-claim of Phillips' fourth ground.

C. **Ground Five:** *Trial-Court Error / Sentencing*

Phillips claims in his fifth ground for relief that the trial court "abused its discretion in failing to grant Petitioner's motion to vacate fines and costs."  (Doc. 10-3 at 7.)  He argues that the court imposed the costs and fines without announcing this penalty during the sentencing hearing, depriving him of his "right to be present" and respond to the sentence.  (*Id.*)

Challenges to a state court's interpretation and application of state sentencing laws generally are not cognizable in federal habeas corpus.  *See, e.g., Austin v. Jackson*, 213 F.3d 298, 300 (6th Cir. 2000); *Kipen v. Renico*, 65 Fed. Appx. 958, 959 (6th Cir. 2003).  Moreover, abuse of discretion by a state court judge does not violate federal constitutional law.  *See Sinistaj v. Burt*, 66 F.3d 804, 808 (6th Cir. 1995).

23

This claim is not cognizable on habeas, and the Court will not review it.

## V. THE MERITS OF PETITIONER'S REMAINING CLAIMS

**A.** **Ground One:** *Ineffective Assistance of Trial Counsel*

In his first ground for relief, Phillips claims his trial counsel provided ineffective assistance in violation of his Sixth Amendment rights. Specifically, he complains that trial counsel failed to object when a police detective testified about an FBI analysis of cell towers near the crime scene and Phillips' cell phone calls the night of the murder. The analysis placed Phillips in the vicinity of the crime scene around the time the prosecution contended the murder occurred. (Doc. 10-3 at 3-4.) Phillips argues that the analysis was inadmissible hearsay and his inability to confront the FBI employee who prepared the analysis prejudiced him.[3] (*Id.* at 4.) Respondent argues this claim is meritless. (Doc. 13 at 26-31.)

The Supreme Court enunciated a two-part test governing claims of ineffective assistance of trial counsel in *Strickland v. Washington*, 466 U.S. 668 (1984). First,

---

[3] In his traverse, Phillips also claims his trial counsel were ineffective for deciding not to interview, call, confront or examine the FBI agent who produced the analysis. (*See* Doc. 26-1 at 19-20.) This uncalled witness claim is separate and distinct from Phillips' failure to object claim, as it rests on a "factually dissimilar premise[]." *Lott v. Coyle,* 261 F.3d 594, 619 (6th Cir. 2001). Habeas courts do not address claims that are asserted for the first time in a petitioner's traverse. *See, e.g., Jalowiec v. Bradshaw*, 657 F.3d 293, 311 (6th Cir. 2011). Furthermore, even if the Court were to overlook the fact that the claim was not properly raised in his petition because Phillips is a pro se litigant, the claim would be procedurally defaulted, as Phillips never raised it in state court and now is precluded from doing so. *See, e.g., Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2000) (where a petitioner fails to present a claim in state court, that claim is procedurally defaulted because the Ohio state court would no longer entertain the claim).

a petitioner must demonstrate that his counsel's conduct was so below acceptable standards of representation that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment to the United States Constitution. *Id.* at 687. Second, he must demonstrate how that the trial counsel's performance prejudiced the petitioner's defense to such an extent that it rendered the proceeding unfair. *Id.* To establish prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In other words, a counsel's deficient performance must have "caused the defendant to lose what he otherwise would probably have won" and it must have been "so manifestly ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

"[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Mere disagreements by a defendant with tactics or strategies employed by counsel are not enough to support a claim of ineffective assistance of counsel and there is a presumption that the challenged conduct of a petitioner's counsel was a matter of strategy. *Id.* at 689; *see also United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

Phillips presented this claim on direct appeal. The state appellate court, the last state court to address this claim, opined:

25

{¶ 21} In his First Assignment of Error, appellant contends his trial attorneys were ineffective for failing to object to police testimony at trial concerning an FBI analysis of certain cell phone and cell tower usage at the time of Leeson's murder, where no FBI agents or representatives testified. We disagree.

{¶ 22} Our standard of review is set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Ohio adopted this standard in the case of *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. These cases require a two-pronged analysis in reviewing a claim for ineffective assistance of counsel. First, we must determine whether counsel's assistance was ineffective; whether counsel's performance fell below an objective standard of reasonable representation and was violative of any of his essential duties to the client. If we find ineffective assistance of counsel, we must then determine whether or not the defense was actually prejudiced by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect. This requires a showing that there is a reasonable probability that but for counsel's unprofessional error, the outcome of the trial would have been different. *Id*. Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. . . .

{¶ 23} It is well-established that "[c]ompetent counsel may reasonably hesitate to object [to errors] in the jury's presence because objections may be considered bothersome by the jury and may tend to interrupt the flow of a trial." . . . Moreover, the United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Bradley* at 143, 538 N.E.2d 373, quoting *Strickland* at 697.

{¶ 24} In essence, appellant in the case sub judice maintains that his trial counsel should have objected to the detectives' reliance on FBI cell tower analyses on the basis that said testimony violated his constitutional right to confront witnesses. Alliance Detective Don Wensel testified that he provided crime scene area information to the FBI, who then assimilated the information and created tower locations maps, which became State's Exhibit 42. Wensel utilized Exhibit 42 in his testimony, proceeding to testify about the time frame of the calls from appellant's cell phone and the manner in which the signals were received and relayed by local towers. See Tr. at 81–100.

{¶ 25} In *Crawford v. Washington* (2004), 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177, United States Supreme Court held that under the Confrontation Clause, "testimonial" statements of a witness who does not appear at trial may not be admitted or used against a criminal defendant unless the declarant is unavailable to testify and the defendant has had a prior opportunity for cross-examination. Recently, in *Melendez–Diaz v. Massachusetts* (2009), ——U.S. ——, 129 S.Ct. 2527, 174 L.Ed.2d 314, the United States Supreme Court, applying *Crawford*, concluded it was a violation of a defendant's right to confrontation in a drug trafficking case where a lab analyst's notarized certificates regarding the identity and weight of the substance at issue were admitted without affording the defendant an opportunity to cross-examine the lab analyst. . . .

{¶ 26} The State responds that it had on its witness list an FBI representative who could testify concerning the software program used to assist the Alliance police in the preparation of the tracking of Phillips' cell phone. As the State aptly suggests, a competent defense attorney, having reviewed the prosecutor's discovery materials, may likely have made a strategic decision not to insist on the presence of a qualified federal agent at trial to possibly buttress the accuracy of a software program used to track movements from a murder suspect's cell phone. See Appellee's Brief at 16. "[C]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." *Buckelew v. United States* (5th Cir.1978), 575 F.2d 515, 521. In the present circumstances, it becomes quite problematic for a reviewing court to consider the rule of *Melendez–Diaz* in the context of a direct claim of ineffective assistance, without straying de hors the record. Speculation by this Court as to the overall effect of an FBI analyst's foundational technical testimony on the jury's ultimate decision-making process would thus be disfavored. Generally, "[s]peculation is insufficient to demonstrate the required prejudice needed to succeed on a claim for ineffective assistance of counsel." . . .

{¶ 27} Accordingly, upon review, we find no demonstration of ineffective assistance of trial counsel for want of invoking *Crawford* and *Melendez–Diaz* under the circumstances.

*Phillips*, 2011 WL 6655887, at **3-4 (certain internal citations omitted).

The state appellate court's decision was reasonable. Phillips has not demonstrated that his trial counsel's failure to object to the detective's testimony about the FBI analysis was deficient. Courts reviewing ineffective-assistance claims must begin with the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689. Indeed, "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690. As the state court observed, defense counsel may have reasonably decided not to object to the detective's testimony because an FBI representative may have been even more credible and persuasive. The Sixth Circuit has explained that given the "numerous potentially objectionable events" that occur throughout a trial,

> any single failure to object usually cannot be said to have been error unless the evidence sought is so prejudicial to a client that failure to object essentially defaults the case to the state. Otherwise, defense counsel must so consistently fail to use objections, despite numerous and clear reasons for doing so, that counsel's failure cannot reasonably have been said to have been part of a trial strategy or tactical choice.

*Hodge v. Haeberlin*, 579 F.3d 627, 648 (6th Cir. 2009) (quoting *Lundgren v. Mitchell*, 440 F.3d 754, 774 (6th Cir. 2006)). Phillips has not demonstrated that his counsel's conduct was not reasonable trial strategy.

Even more significantly, Phillips has not shown that counsel's failure to object in this particular instance so prejudiced him that but for that omission, the result of his trial would have been different. *Id.* at 694. And without proving prejudice, Phillips cannot prevail on his ineffective-assistance claim – regardless of

whether his counsel was deficient or not.  *Id.*. at 697 ("a court need not determine whether counsel's performance was deficient before examining the prejudice suffered").

Phillips contends that the FBI cell tower and cell phone analysis was "critical, as it [was] the only evidence the [State] claim[ed] put[ him] near the scene of the crime on the night in question."  (Doc. 26-1 at 15.)  He argues that had counsel objected to the detective's testimony about the cell phone calls, the author of the FBI analysis would have testified and established the following points:

> 1) The location of Petitioner cannot be accurately ascertained by the records due to the broad coverage of the antennae and the overlap of coverage creating inaccuracy of the determination of Petitioner's location, especially in light of the fact that his home is within the margin of error for the range of the towers, which is 3-5 miles; 2) The phone calls alleged to be made by Petitioner between 10:52 p.m. and 11 :52 p.m. cannot be conclusively shown to be made by him, as no one answered the calls to verify that Petitioner had made them. . . .;  3) As the coroner did not determine a time of death, the State's arbitrary conclusion that the victim was murdered at the time Petitioner allegedly made the phone calls is unfounded . . . .

(Doc. 26-1 at 25-26.)

Phillips' argument is entirely speculative.  He has offered no evidence, beyond his own conclusory assertions, to prove what the content of the FBI representative's testimony would have been.  He therefore cannot show that he was prejudiced by its omission.  *Strickland* commands that petitioners "affirmatively prove prejudice."  *Strickland,* 466 U.S. at 693.  For that reason, "allegations about possible testimony that might have been offered by a witness who was not called are viewed by the courts with great caution."  *Winborn v. United States*, No. 13-cv-

14257, at *3 (E.D. Mich. Apr. 29, 2014) (citing *Evans v. Cockrell*, 285 F.3d 370, 377

(5th Cir. 2002); *United States v. Luciano*, 158 F.3d 655, 660 (2nd Cir.1998)). *See*

*also Clark v. Waller*, 490 F.3d 551, 558 (6th Cir. 2007) (finding no prejudice under

*Strickland* where petitioner offered "nothing more than speculation" about how an

uncalled witness would have testified).

Furthermore, given the considerable evidence of Phillips' guilt, as discussed

below, it is difficult to conclude that an FBI employee's testimony about the analysis

would have been so different from Detective Wensel's, and so helpful to the defense,

that it likely would have altered the outcome of Phillips' trial.  Accordingly, the

state appellate court's decision finding no ineffective assistance of counsel was

neither contrary to, nor an unreasonable application of, *Strickland*.[4]

## B.    Ground Four:  *Sufficiency of the Evidence*

In his fourth ground for relief, Phillips argues that his convictions were not

supported by sufficient evidence.  (Doc. 10-3 at 6.)  Respondent contends the claim

is meritless. (Doc. 13 at 41.)

The Due Process Clause of the Fourteenth Amendment requires a state to

prove every element of a crime beyond a reasonable doubt.  *Jackson v. Virginia*, 443

---

[4]  Phillips also argues in his traverse that he is entitled to relief for the
ineffective assistance of his trial counsel under the harmless-error standard of
*Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993).  (*See* Doc. 26-1 at 21-25.)  The
Sixth Circuit has advised, however, that "[t]he prejudice prong of the ineffective
assistance analysis subsumes the *Brecht* harmless-error review."  *Hall v.
Vasbinder*, 563 F.3d 222, 236 (6th Cir. 2009).  The Court, therefore, will not address
that argument.

U.S. 307, 315–16 (1979). A habeas court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis in original). "[T]he *Jackson* inquiry does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993).

Because both *Jackson* and AEDPA apply to Phillips' sufficiency claim, this Court's review requires deference at two levels. "'First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the [state court's] consideration of the trier-of-fact's verdict, as dictated by [the] AEDPA.'" *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (quoting *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008)). The Sixth Circuit has observed that "'[a] defendant who challenges the sufficiency of the evidence to sustain his conviction faces a nearly insurmountable hurdle.'" *Id.* at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

Phillips presented this claim on direct appeal. The state appellate court, the last state court to address the claim, reasoned:

> {¶ 45} In reviewing a claim of insufficient evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
> . . .

{¶ 47} Based on the arguments in the briefs, we will focus on the two most serious charges against appellant. He was convicted of aggravated murder, R.C. 2903.01(B), which provides that "[n]o person shall purposely cause the death of another ... while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit ... aggravated robbery and/or aggravated burglary." Appellant was further convicted of aggravated robbery under R.C. 2911.01(A)(3). That statute provides that "[n]o person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised code, or in fleeing immediately after the attempt or offense, shall ... [i]nflict, or attempt to inflict, serious physical harm on another.

{¶ 48} The record reveals that Leeson was observed playing pool at the Elks Club until about 10:00 PM on the evening of March 10, 2010. Although at trial the coroner was unable to set forth an estimated time of death for Leeson, police detectives theorized that Leeson was killed between 10:52 PM and 11:52 PM on March 10, 2010. Two of Leeson's neighbors, Kevin Kline and Jennifer Hall, both heard the sound of a house door slamming at about 11 PM. Hall also saw Leeson's Chrysler being abruptly driven from the residence that night, although Hall could not see the driver at the time. Cell tower analysis indicated that appellant's cell phone was used at least twice within a 2.8 mile radius of Leeson's residence on the night of March 10, 2010.

{¶ 49} In addition, drug dealer Waylon Hillman and his girlfriend, Kristen Carli, testified that appellant sold them two TVs, in exchange for crack cocaine, early the next morning, March 11, 2010. Carli later pawned one of the TVs in Alliance. Detectives were able to trace both TVs back to Leeson's house. Carli also witnessed appellant in possession of and later setting fire to the interior of Leeson's Chrysler in Lexington Township on the morning of March 11, 2011.

{¶ 50} Appellant correctly notes that the State did not produce any forensic or physical evidence linking appellant to the scene of Leeson's murder. No blood or DNA from Leeson was linked to appellant's person or clothing. Likewise, no DNA from appellant was found on Leeson, including any scrapings from under his fingernails. Although the perpetrator apparently spread bleach and ammonia around the scene and Leeson's body as a means of destroying evidence, no evidence was presented at trial that appellant, when taken into custody, smelled of those chemicals or that he had traces on his person. Finally, no eyewitnesses positively put appellant at or inside Leeson's

residence on the night of the killing, although two of appellant's housemates, Rusty Inherst and Billy Jo Orzo, recalled hearing him come home about 4 AM on March 11, 2011.

{¶ 51} Neither the fact of Leeson's death as a homicide nor the lack of physical evidence at the scene is in serious dispute in this appeal. Thus, the "sufficiency" portion of this assignment of error boils down to the nature of the evidence pointing to appellant's identity as the purposeful murderer and robber.

{¶ 52} It is well-established in Ohio that circumstantial evidence has the same probative value as direct evidence. . . .  Courts must periodically be on guard against what some researchers have labeled the "CSI effect," a theory which posits that jurors who are familiar with forensic science techniques via television and other media will hold prosecutors to an unreasonably high standard of proof. . . . Furthermore, because defendants may often deny having a purpose to kill, Ohio law recognizes that purpose can be determined from the surrounding facts and circumstances. . . .

{¶ 53} The record in this case reveals overwhelming evidence that appellant was in possession of Leeson's Chrysler and two TVs from Leeson's house the morning after Leeson was killed. Appellant was seen "torching" the Chrysler, creating an inference that he was trying to destroy evidence. After this, appellant got in the passenger seat of Carli's car, telling Carli she "might hear some bad things," and not to start talking about something "you don't know about." Tr. at 164, 186. Evidence was also presented of appellant's jealousy over Tammie Goodwin, who periodically stayed with Leeson and maintained a sexual relationship with him. Appellant's jealousy over Goodwin was evinced by a letter dated the day before the killing, in which appellant told another of Goodwin's boyfriends, prison inmate Mike Stillion, that Goodwin was his and Stillion should leave her alone, claiming to be "one of the baddest motherfuckers with my hands you'll ever know." Furthermore, Beth Ann Pryor, a long-time friend of appellant, had spoken to appellant a few weeks before the killing, at which time appellant told her he was aware that Leeson always had "a pocketful of money on Friday nights" and that he was going to "rob the old man." Tr. at 120–121.

{¶ 54} Upon review of the aforesaid, we find sufficient circumstantial evidence existed for reasonable fact finders to convict on the aggravated murder, aggravated robbery, and remaining charges

(aggravated burglary, tampering with evidence, and arson) against appellant. The convictions were supported by the sufficiency of the evidence. We further hold the jury did not clearly lose its way and create a manifest miscarriage of justice requiring that appellant's convictions be reversed and a new trial ordered. The convictions were not against the manifest weight of the evidence.

*Phillips*, 2011 WL 6655887, at **7-9 (certain internal citations omitted).

Phillips argues the state appellate court's decision was unreasonable for essentially two reasons. First, he points to the lack of physical or other direct evidence linking him to the crimes. He notes there was no DNA belonging to Leeson, blood, bleach, or ammonia found on him or his belongings, despite the significant amount of blood, bleach, and ammonia at the crime scene, and the signs of a struggle there. (Doc. 26-1 at 36.) And, her argues, there was no DNA, fingerprints, or footprints of his found at the site of the murder or arson, in Carli's car, or on the stolen televisions. (*Id.* at 36-38.) Nor were there any marks or injuries on his body indicative of a struggle with Leeson. (*Id.* at 41.) Phillips also contends that "there was no possible way" that he would have had time to burn Leeson's car given the time line established by the State witnesses. (*Id.* at 39-40.) Finally, he points out that the coroner could not determine an exact time of death. (*Id.* at 40.)

As the state appellate court explained, however, a court may sustain a conviction based upon nothing more than circumstantial evidence. *See, e.g., United States v. Kelley*, 461 F.3d 817, 825 (6th Cir. 2006) ("Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every

34

reasonable hypothesis except that of guilt."); *United States v. Peters*, 15 F.3d 540, 544 (6th Cir. 1994) (same).  Indeed, the Supreme Court has explained that circumstantial evidence is "intrinsically no different from testimonial evidence," and that both "may in some cases point to a wholly incorrect result."  *Holland v. United States*, 348 U.S. 121, 140 (1954).  "Yet . . . [i]n both instances, a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference."  *Id.* at 137-38.  To accomplish this, "the jury must use its experience with people and events in weighing the probabilities. If the jury is convinced beyond a reasonable doubt, we can require no more."  *Id.* at 138.

The state court found the evidence of Phillips' guilt "overwhelming," even if it was circumstantial.  *Phillips*, 2011 WL 6655887, at *8.  It highlighted Hillman and Carli's testimony that Phillips was driving Leeson's car and had two of Leeson's televisions the morning after Leeson was killed, and Carli saw Phillips "torching" the car, after which he told her she "might hear some bad things," but not to talk about something "[she] don't know about."  *Id.*  The court also noted Phillips' jealousy of Goodwin's relationships with other men, of which Leeson was one, and the letter he wrote the day before the killing to a former boyfriend of Goodwin, warning him to stay away from her and claiming to be "one of the baddest motherfuckers with my hands you'll ever know."  *Id.*  Finally, it considered Phillips' friend who testified that Phillips told her a few weeks before the killing that Leeson always had "a pocketful of money on Friday nights," and he was going to "rob the old man."  *Id.*

The Court must defer to these factual findings, which are "presumed to be correct" unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  Phillips has not met that burden.  After reviewing this evidence in a light most favorable to the prosecution, the Court finds the jury's decision to convict Phillips and the appellate court's decision to affirm his convictions, entirely rational.  *Jackson*, 443 U.S. at 319.

Phillips' second line of attack focuses on the credibility of the State witnesses, particularly Hillman and Carli.  He argues that the "only evidence that even tenuously link[ed] him to the crime [were] the self-serving testimonies of Hillman and Carli . . . ."  (Doc. 26-1 at 36.)  He maintains they were motivated to lie and implicate him at trial because they "were the only people positively identified as being in possession of the victim's stolen property"; they testified they used drugs the night of the murder; and Hillman had a history of violent criminal activity.  (*Id.* at 36-37.)  Phillips also asserts that Jen Hall, Leeson's neighbor, lied when she testified she saw Leeson's car backing out of his driveway.  (*Id.* at 38.)  He claims she originally told police she could not identify the car.  (*Id.*)

Habeas courts, however, may not re-weigh the testimony or redetermine the credibility of witnesses, as that is solely the province of the jury.  *See, e.g., Marshall v. Lonberger*, 459 U.S. 422, 434 (1983); *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009) (citing *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993)).

Thus, Phillips has not overcome the "nearly insurmountable hurdle" to prevail on this claim.  *Davis*, 658 F.3d at 534 (internal quotation marks and citation

omitted).  The state appellate court provided a detailed account and well-reasoned analysis of the evidence presented to support Phillips' convictions.  And its decision was neither contrary to, nor an unreasonable application of, *Jackson*.

## V.  RECOMMENDATION

Phillips' amended petition for a writ of habeas corpus (Doc. 10) should be denied.


Dated:   May 6, 2016                       /s/ Kenneth S. McHargh
                                         Kenneth S. McHargh
                                         United States Magistrate Judge



ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).