UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JEFFREY SCOTT PHILLIPS, | ) | Case No. 5:13CV0693 |
| | ) | |
| Petitioner | ) | JUDGE JEFFREY J. HELMICK |
| | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| v. | ) | |
| | ) | |
| CHRISTOPHER LaROSE, | ) | |
| Warden, | ) | |
| | ) | |
| Respondent. | ) | REPORT AND RECOMMENDATION |
| | ) | |

Before the court is the amended petition of Jeffrey Scott Phillips ("Phillips")

for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.  The petition is before

the magistrate judge pursuant to Local Rule 72.2(b)(2).  The petitioner is in the

custody of the Ohio Department of Rehabilitation and Correction pursuant to

journal entry of sentence in the case of *State of Ohio v. Phillips*, Case No. 2010-CR-

0772 (Stark County November 15, 2010).  (R. 10, PageID #: 40.)

Phillips filed the petition *pro se,* following his 2010 convictions for aggravated

murder, aggravated robbery, and other crimes in the Stark County (Ohio) Court of

Common Pleas.  (R. 10.)  On November 20, 2017, the court issued a Memorandum

Opinion addressing the petitioner's objections to a May 2016 Report and

Recommendation, in which the court adopted the magistrate judge's

recommendations on procedural default and non-cognizable claims.  (R. 38, PageID

#: 1201-1204, 1205.)  However, the petitioner's objection pertaining to his lack of trial court transcripts was well-taken, the respondent was ordered to serve copies of the trial transcripts, and the remaining claims were referred to the undersigned for further proceedings on those remaining claims.  *Id.* at 1205.

The two grounds remaining are (1) ineffective assistance of trial counsel (Ground One) and (2) a challenge to the sufficiency of the evidence (part of Ground Four).  Specifically, the first ground for relief in the amended petition is:

> Petitioner's constitutional rights were violated when the petitioner's counsel failed to object to the introduction of hearsay in the form of an FBI-generated cell tower analysis and report which was received and used by the investigating agency as a foundation for prejudicial charts and testimony when introduced at trial to show the vicinity of cell phone towers.

(R. 10, PageID #: 44; R. 10-3, PageID #: 62-63.)  The fourth ground for relief is:  "The jury's verdict is against the sufficiency and manifest weight of the evidence presented at trial."  (R. 10, PageID #: 49; R. 10-3, PageID #: 65.)  The court ruled that the manifest weight sub-claim was not cognizable in a habeas proceeding, thus only the sufficiency of the evidence sub-claim survives.   (R. 38, PageID #: 1204; R. 30, PageID #: 1143.)

After referral to the undersigned Magistrate Judge, Phillips was ordered (R. 40) to file an Amended Traverse, which has been filed (R. 55), and the respondent has filed a Sur-Reply (R. 58).  For the following reasons, the magistrate judge recommends that the petition be denied.

2

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Ohio Court of Appeals provided the following factual and procedural background:

> On March 11, 2010, James Leeson, a sixty-six-year-old retired firefighter, was found beaten and stabbed to death in the basement of his house on East College Street in Alliance, Ohio.  A Stark County Sheriff's Deputy, Michael Leary, assisted by one of Leeson's neighbors, discovered the body as part of the deputy's follow-up of the discovery of Leeson's automobile, a 2001 Chrysler Sebring convertible.  The car had been discovered engulfed in flames that morning in nearby Lexington Township.  The Alliance Police Department was thereupon contacted to investigate the scene.

> Alliance detectives discovered, among other things, that the entertainment center areas in the master bedroom and living room were missing their respective flat-screen television sets.  A ceremonial sword with blood stains was in the basement.  The bedroom was also found ransacked.  The detectives also noticed extensive areas of spilled ammonia and bleach at the scene, including amounts on and around Leeson's body.  There were no signs of forced entry on the outside doors.  However, some of the neighbors reported they had heard a loud banging around 11:00 or 11:30 PM on March 10, sounding like a storm door being caught in the wind.  One neighbor, Jennifer Hall, saw Leeson's car coming out of his driveway, traveling fast.  She could not see the driver.

> On the morning of March 11, 2010, at about 6:00 AM, appellant made a cell phone call to Waylon Hillman, a local drug dealer, asking him to look at two television sets appellant wanted to exchange for some crack cocaine.  A meeting was arranged at a parking lot in Alliance.  Appellant arrived alone, driving a "nice car," a convertible.  Tr. at 262.  Hillman came to the parking lot with his girlfriend, Kristen Carli.  The three went to Hillman's grandmother's home to plug in and check the operability of the TVs.  Appellant thereupon exchanged the TVs with Hillman for about $200.00 worth of crack cocaine.

> Carli then got in her car and followed appellant, who drove Leeson's car.  She later watched as he set the interior of Leeson's convertible on fire.

3

At Hillman's request, Carli thereafter took the TVs to an Alliance pawn shop in order to get some cash.  The pawn shop accepted one of the sets, but rejected the other because the color picture was unsatisfactory.  Hillman thereafter sold the second TV to a third party. Police detectives later traced the TVs to those taken from Leeson's home.

Police investigation also revealed that a cell phone registered to appellant was used to make calls to Waylon Hillman on March 10, 2010 at 10:52 PM and 11:52 PM.  Cell tower analysis indicated that said cell phone was within 2.8 miles of Leeson's house at those times. Another call was made on appellant's cell phone at 6:52 AM on March 11, 2010.

The detectives also interviewed Tammie Goodwin, Leeson's friend and occasional paramour.  Goodwin is married to Keith Smith.  She was also living with appellant at the time of Leeson's killing.  Goodwin told police she had tried to contact Leeson on March 11, 2010, but got no answer on his phone.

The Stark County Coroner conducted an autopsy of Leeson's body.  It indicated multiple signs of blunt force trauma to Leeson's neck, face and forehead.  There were also six stab wounds, four of which were in Leeson's chest, and chemical burns stemming from liquid bleach that had been poured on the body.  The coroner listed the cause of death as a homicide caused by blunt head trauma and multiple stab wounds.

(R. 13-1, RX 2, PageID #: 131-133; *State v. Phillips*, No. 2010 CA 00338, 2011 WL 6655887, at *1-*2 (Ohio Ct. App. Dec. 19, 2011).)  Phillips was indicted for aggravated murder, aggravated robbery, aggravated burglary, tampering with evidence, and arson.  (R. 13-1, RX 3.)

After a jury trial, Phillips was found guilty of all the charges.  (R. 13-1, RX 20.)  The trial court sentenced Phillips to prison terms of life without parole for aggravated murder, ten years each for aggravated robbery and aggravated

burglary, five years for tampering with evidence, and eighteen months for arson.

(R. 13-1, RX 1.) Phillips filed a timely notice of appeal. (R. 13-1, RX 21.)

> On direct appeal, Phillips raised five assignments of error:
>
> 1. Appellant's counsel were ineffective in failing to object to the introduction of hearsay in the form of an FBI generated cell tower analysis and report which was received by the investigating agency and used by the investigating agency as a foundation for prejudicial charts and testimony and which was also introduced at trial to show the vicinity of cell phone signals to local cell phone towers.
>
> 2. The trial court abused its discretion in permitting the introduction of a letter to an unrelated third party which included other inadmissible other acts evidence.
>
> 3. The trial court abused its discretion in admitting the gruesome photos of the crime scene and autopsy where were inflammatory and highly prejudicial.
>
> 4. The jury's verdict is against the sufficiency and manifest weight of the evidence presented at trial.
>
> 5. The trial court abused its discretion in failing to grant appellant's motion to vacate fines and costs.

(R. 13-1, RX 22, PageID #: 198.) On December 19, 2011, the court of appeals

affirmed the judgment of the trial court. (R. 13-1, RX 2; *Phillips*, 2011 WL

6655887.)

> Phillips appealed that decision to the Supreme Court of Ohio, raising the

following five propositions of law:

> 1. Appellant's counsel were ineffective in failing to object to the introduction of hearsay in the form of an FBI generated cell tower analysis and report which was received by the investigating agency and used by the investigating agency as a foundation for prejudicial charts and testimony and which was also introduced at trial to show

the vicinity of cell phone signals to local cell phone towers in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 & 16 of the Ohio Constitution.

2.  The trial court abused its discretion in permitting the introduction of a letter to an unrelated third party which included other inadmissible other acts evidence in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 & 16 of the Ohio Constitution.

3.  The trial court abused its discretion in admitting the gruesome photos of the crime scene and autopsy where were inflammatory and highly prejudicial in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 & 16 of the Ohio Constitution.

4.  The jury's verdict is against the sufficiency and manifest weight of the evidence presented at trial in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 & 16 of the Ohio Constitution.

5.  The trial court abused its discretion in failing to grant appellant's motion to vacate fines and costs in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 & 16 of the Ohio Constitution.

(R. 13-1, RX 25, PageID #: 277-278.)  The state high court appointed new counsel for

Phillips, and he filed an amended memorandum in support of jurisdiction, raising

the following propositions of law:

1.  If a fact admitted at trial is based on an out-of-court human information gathering and computer analysis, the Confrontation Clause demands that those witnesses that did the information gathering and computer analysis testify at trial.

A.  Mr. Phillips' trial counsel was ineffective for failing to demand that the F.B.I. agent or representative testify at trial.

6

> B.  This Court should accept Mr. Phillips' First
> Proposition of Law and stay the briefing pending a
> decision in State v. Hood, 2010-2260.
>
> 2.  A person may not be convicted of aggravated murder, aggravated
> robbery, aggravated burglary, or tampering with evidence, unless the
> State presents evidence on each element of each offense.
>
> 3.  All aspects of the court's judgment must be orally imposed at the
> sentencing hearing, including but not limited to, the imposition of any
> sentence, fines, and court costs.

(R. 13-1, RX 27, PageID #: 309.)  On April 18, 2012, the Supreme Court of Ohio

declined jurisdiction of his appeal.  (R. 13-1, RX 29; *State v. Phillips*, 131 Ohio St.3d

1510, 965 N.E.2d 311 (2012).)

While his direct appeal was pending, Phillips filed a petition to vacate or set

aside judgment of conviction or sentence, pursuant to Ohio Rev. Code § 2953.21, in

the trial court.  His postconviction petition raised the following claims:

> 1.  I was deprived [of] my sixth amendment right to effective counsel.
>
> 2.  Sixth amendment violation ineffectiveness of counsel.

(R. 13-1, RX 30, PageID #:  357-360.)  On July 11, 2012, the trial court granted the

State's motion to dismiss, and dismissed the petition.  (R. 13-1, RX 36.)

On December 14, 2012, Phillips filed a motion in the trial court entitled

"Relief from Judgment Civil Rule 60(B)."  (R. 13-1, RX 37.)  The court, treating the

motion as a postconviction petition (R. 13-1, RX 42, PageID #: 421 n.1), ruled on

July 12, 2013, that the claims were barred by res judicata, and dismissed the

petition as untimely filed (R. 13-1, RX 42, PageID #: 428.)

Phillips filed a notice of appeal.  (R. 13-1, RX 44.)  His appellate brief raised a single assignment of error:  "The court of common pleas abused its discretion when it failed and/or refused to provide findings of fact and conclusions of law in support of its decision to deny the post-conviction relief."  (R. 13-1, RX 45, PageID #: 433.)  On February 18, 2014, the court of appeals denied his appeal as untimely.  (R. 13-1, RX 45; *State v. Phillips*, No. 2013 CA 00160, 2014 WL 688221 (Ohio Ct. App. Feb. 18, 2014).)

Phillips filed another notice of appeal of the July 12, 2013, judgment, along with a motion for leave to file a delayed appeal on March 17, 2014.  (R. 13-1, RX 49-50.)  On April 15, 2014, the court of appeals denied his motion for delayed appeal, indicating that a "delayed appeal is not available in an appeal of a post conviction relief determination."  (R. 13-1, RX 52.)  Phillips did not appeal that decision to the Supreme Court of Ohio.

## II.  HABEAS CORPUS REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, which provides the standard of review that federal courts must apply when considering applications for a writ of habeas corpus.  Under the AEDPA, federal courts have limited power to issue a writ of habeas corpus with respect to any claim which was adjudicated on the merits by a state court.  The Supreme Court, in *Williams v. Taylor*, provided the following guidance:

Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied -- the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-413 (2002).  *See also Lorraine v. Coyle*, 291 F.3d 416, 421-422 (6th Cir. 2002), *cert. denied*, 538 U.S. 947 (2003).

A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." *Williams*, 529 U.S. at 405.  *See also Price v. Vincent*, 538 U.S. 634, 640 (2003).  A state court decision is not unreasonable simply because the federal court considers the state decision to be erroneous or incorrect. Rather, the federal court must determine that the state court decision is an objectively unreasonable application of federal law.  *Williams*, 529 U.S. at 410-12; *Lorraine*, 291 F.3d at 422.

Phillips has filed his petition *pro se*.  The pleadings of a petition drafted by a *pro se* litigant are held to less stringent standards than formal pleadings drafted by lawyers, and will be liberally construed.  *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001) (citing *Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519

9

(1972) (per curiam)).  No other special treatment is afforded litigants who decide to

proceed *pro se. McNeil v. United States*, 508 U.S. 106, 113 (1993) (strict adherence

to procedural requirements); *Jourdan v. Jabe*, 951 F.2d 108 (6th Cir. 1991); *Brock v.*

*Hendershott*, 840 F.2d 339, 343 (6th Cir. 1988).

The question before this federal habeas court is whether the state court

decision was contrary to, or involved an unreasonable application of, clearly

established federal law, as determined by the Supreme Court of the United States.

Federal habeas relief is not available for a claimed violation of state law, thus any

alleged violation of Ohio law or the Ohio Constitution is not properly before this

court.  *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

## III.  INEFFECTIVE ASSISTANCE OF COUNSEL:
## FAILURE TO OBJECT

The first ground of the petition is that trial counsel was ineffective "in failing

to object to the introduction of hearsay in the form of an FBI generated cell tower

analysis and report which was received by the investigating agency and used by the

investigating agency as a foundation for prejudicial charts and testimony and which

was also introduced at trial to show the vicinity of cell phone signals to local cell

phone towers."  (R. 10, PageID #: 44; R. 10-3, PageID #: 62-63.)  Phillips claims his

trial counsel provided ineffective assistance in violation of his Sixth Amendment

rights.  Specifically, he complains that trial counsel failed to object when a police

detective testified about an FBI analysis of cell towers near the crime scene and

Phillips' cell phone calls the night of the murder.  (R. 10-3, PageID #: 63; R. 55, PageID #: 2312-2319.)  The analysis placed Phillips in the vicinity of the crime scene around the time the prosecution contended the murder occurred.  (R. 10-3, PageID #: 63.)

Phillips contends that the analysis was inadmissible hearsay and his inability to confront the FBI employee who prepared the analysis prejudiced him.[1] (R. 10-3, PageID #: 63.)  Phillips argues that the maps and charts compiled by an FBI agent were prepared for purposes of trial, and were testimonial in nature.  (R. 55, PageID #: 2312-2313.)  He contends that such testimonial evidence should be considered hearsay, and should have been barred through objection, unless the declarant testified under circumstances where he could have been cross-examined about his statements.  *Id.* at PageID #: 2313, citing *State v. Mitchell*, 2012 Ohio

---

[1] In his amended traverse, Phillips also claims counsel was ineffective for deciding not to interview or examine the FBI agent who produced the analysis. *See* R. 55, PageID #: 2318, 2325-2326.  This uncalled-witness claim is separate and distinct from Phillips' failure to object claim, as it rests on a "factually dissimilar premise[]." *Lott v. Coyle*, 261 F.3d 594, 619 (6th Cir. 2001), *cert. denied*, 534 U.S. 1147 (2002). Habeas courts do not address claims that are asserted for the first time in a petitioner's traverse. *See, e.g.*, *Jalowiec v. Bradshaw*, 657 F.3d 293, 311 (6th Cir. 2011), *cert. denied*, 568 U.S. 828 (2012); *Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005), *cert. denied*, 547 U.S. 1074 (2006) (citing cases). Furthermore, Phillips never raised this discrete claim in state court and now is precluded from doing so. *See, e.g.*, *Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2000) (where petitioner fails to present claim in state court, that claim is procedurally defaulted because Ohio courts would no longer entertain the claim).

11

3722[2]; *Crawford v. Washington*, 541 U.S. 36 (2004).  Counsel was thus allegedly ineffective for failing to object to the testimony.

Respondent argues this claim is meritless.  (R. 13, PageID #: 96-101.)

Under the Sixth Amendment to the U.S. Constitution, "the right to counsel is the right to effective assistance of counsel."  *Missouri v. Frye*, 566 U.S. 134, 138 (2012); *Joshua v. DeWitt*, 341 F.3d 430, 437 (6th Cir. 2003) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)).  The Sixth Circuit discussed the general standard for ineffective assistance of counsel in *Monzo v. Edwards*:

> To establish ineffective assistance of counsel under Strickland, the defendant must show that his counsel's performance fell below an objective standard of reasonableness and that his counsel's errors were so serious as to prejudice the defendant.  Review of counsel's performance is highly deferential and requires that courts "indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance."  To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."

*Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002) (internal citations omitted).

*See generally Strickland v. Washington*, 466 U.S. 668, 689 (1984) (two-part test).

---

[2]  Phillips implies at several points that the state court decision resulted in a violation of Ohio law.  *See, e.g.*, R. 55, PageID #: 2312, citing *State v. Hood*, 135 Ohio St.3d 137, 984 N.E.2d 1057 (2012); *id.* at PageID #: 2313, citing *State v. Mitchell*, No. 24797, 2012 WL 3542309 (Ohio Ct. App. Aug. 17, 2012).  The question before this court is whether the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Any alleged violation of Ohio law is not properly before this court.  *See Lewis*, 497 U.S. at 780.

Mere disagreements by a defendant with tactics or strategies employed by counsel are not enough to support a claim of ineffective assistance of counsel, and there is a presumption that the challenged conduct of a petitioner's counsel was a matter of strategy. *Strickland*, 466 U.S. at 689; *see also United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990), *cert. denied*, 498 U.S. 1002 (1990).

In the habeas context, this court considers petitioner's ineffective assistance claim "within the more limited assessment of whether the state court's application of *Strickland* to the facts of this case was objectively unreasonable." *Washington v. Hofbauer*, 228 F.3d 689, 702 (6th Cir. 2000).  The ineffectiveness claim was presented on direct appeal (R. 13-1, RX 22, PageID #: 209-214), and the state court of appeals ruled on the claim as follows:

> In his First Assignment of Error, appellant contends his trial attorneys were ineffective for failing to object to police testimony at trial concerning an FBI analysis of certain cell phone and cell tower usage at the time of Leeson's murder, where no FBI agents or representatives testified.  We disagree.
>
> Our standard of review is set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674.  Ohio adopted this standard in the case of *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373.  These cases require a two-pronged analysis in reviewing a claim for ineffective assistance of counsel.  First, we must determine whether counsel's assistance was ineffective; whether counsel's performance fell below an objective standard of reasonable representation and was violative of any of his essential duties to the client.  If we find ineffective assistance of counsel, we must then determine whether or not the defense was actually prejudiced by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect.  This requires a showing that there is a reasonable probability that but for counsel's unprofessional error, the outcome of the trial would have been different.  *Id.*  Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of

13

reasonable professional assistance.  *State v. Sallie* (1998), 81 Ohio St.3d 673, 675, 693 N.E.2d 267.

It is well-established that "[c]ompetent counsel may reasonably hesitate to object [to errors] in the jury's presence because objections may be considered bothersome by the jury and may tend to interrupt the flow of a trial."  *State v. Rogers* (April 14, 1999), Summit App.No. 19176, 1999 WL 239100, citing *State v. Campbell* (1994), 69 Ohio St.3d 38, 53, 630 N.E.2d 339 (internal quotations omitted).  Moreover, the United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."  *Bradley* at 143, 538 N.E.2d 373, quoting *Strickland* at 697.

In essence, appellant in the case sub judice maintains that his trial counsel should have objected to the detectives' reliance on FBI cell tower analyses on the basis that said testimony violated his constitutional right to confront witnesses.  Alliance Detective Don Wensel testified that he provided crime scene area information to the FBI, who then assimilated the information and created tower locations maps, which became State's Exhibit 42.  Wensel utilized Exhibit 42 in his testimony, proceeding to testify about the time frame of the calls from appellant's cell phone and the manner in which the signals were received and relayed by local towers.  *See* Tr. at 81-100.

In *Crawford v. Washington* (2004), 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177, United States Supreme Court held that under the Confrontation Clause, "testimonial" statements of a witness who does not appear at trial may not be admitted or used against a criminal defendant unless the declarant is unavailable to testify and the defendant has had a prior opportunity for cross-examination. Recently, in *Melendez-Diaz v. Massachusetts* (2009), ——U.S. ——, 129 S.Ct. 2527, 174 L.Ed.2d 314, the United States Supreme Court, applying Crawford, concluded it was a violation of a defendant's right to confrontation in a drug trafficking case where a lab analyst's notarized certificates regarding the identity and weight of the substance at issue were admitted without affording the defendant an opportunity to cross-examine the lab analyst.  *See State v. Monroe*, Cuyahoga App. No. 94768, 2011-Ohio-3045, ¶ 54.

The State responds that it had on its witness list an FBI representative who could testify concerning the software program used

14

to assist the Alliance police in the preparation of the tracking of Phillips' cell phone.  As the State aptly suggests, a competent defense attorney, having reviewed the prosecutor's discovery materials, may likely have made a strategic decision not to insist on the presence of a qualified federal agent at trial to possibly buttress the accuracy of a software program used to track movements from a murder suspect's cell phone.  *See* Appellee's Brief at 16.  "[C]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." *Buckelew v. United States* (5th Cir.1978), 575 F.2d 515, 521.  In the present circumstances, it becomes quite problematic for a reviewing court to consider the rule of *Melendez-Diaz* in the context of a direct claim of ineffective assistance, without straying de hors the record.  Speculation by this Court as to the overall effect of an FBI analyst's foundational technical testimony on the jury's ultimate decision-making process would thus be disfavored.  Generally, "[s]peculation is insufficient to demonstrate the required prejudice needed to succeed on a claim for ineffective assistance of counsel." *State v. Moon*, Cuyahoga App.No. 93673, 2010-Ohio-4483, ¶ 9, citing *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864 (additional citations omitted).

Accordingly, upon review, we find no demonstration of ineffective assistance of trial counsel for want of invoking *Crawford* and *Melendez-Diaz* under the circumstances.

(R. 13-1, RX 2, PageID #: 135-138; *Phillips*, 2011 WL 6655887, at *3-*4.)

The Supreme Court has affirmed in several cases that this court must approach the state court's rulings in a highly deferential manner.  The Supreme Court stated in *Harrington v. Richter* that the "pivotal question" of whether the state court's application of *Strickland* standard was unreasonable is different from simply deciding whether counsel's performance fell below *Strickland*'s standard. *Harrington v. Richter*, 562 U.S. 86, 101 (2011).  The focus on habeas review is "not whether counsel's actions were reasonable," rather, the question is "whether there

15

is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

The Court in *Richter* instructed that the petitioner must show that the ruling of the state court "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103; *see also Montgomery v. Bobby*, 654 F.3d 668, 676 (6th Cir. 2011) (en banc), *cert. denied*, 566 U.S. 991 (2012) (quoting *Richter*).  The Court acknowledged that, under the AEDPA, this standard was "difficult to meet," however, it was "meant to be" so.  *Id.* at 102; *see also Montgomery*, 654 F.3d at 676.

The state appellate court's decision was reasonable.  Phillips has not demonstrated that his trial counsel's failure to object to the detective's testimony about the FBI analysis was deficient.  Courts reviewing ineffective-assistance claims must begin with the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  *Strickland*, 466 U.S. at 689. As the state court observed, defense counsel may have reasonably decided not to object to the detective's testimony because an FBI representative may have been even more credible and persuasive.  The Sixth Circuit has explained that given the "numerous potentially objectionable events" that occur throughout a trial,

> any single failure to object usually cannot be said to have been error unless the evidence sought is so prejudicial to a client that failure to object essentially defaults the case to the state.  Otherwise, defense counsel must so consistently fail to use objections, despite numerous and clear reasons for doing so, that counsel's failure cannot reasonably

16

have been said to have been part of a trial strategy or tactical choice. *Hodge v. Haeberlin*, 579 F.3d 627, 648 (6th Cir. 2009), *cert. denied*, 559 U.S. 1075 (2010) (quoting *Lundgren v. Mitchell*, 440 F.3d 754, 774 (6th Cir. 2006)).

Nor has Phillips shown that counsel's failure to object in this particular instance so prejudiced him that but for that omission, the result of his trial would have been different. *Strickland*, 466 U.S. at 694. Phillips claims that counsel would have been able to cross-examine the analyst on the accuracy and reliability of the report and the underlying technology. (R. 55, PageID #: 2315-2316, 2320.) He contends that there was no other evidence which placed him at the scene of the crime. *Id.* at PageID #: 2323.

Phillips' argument is entirely speculative. He has offered no evidence, beyond his own conclusory assertions, to prove what the content of the FBI representative's testimony would have been. He therefore cannot show that he was prejudiced by its omission. *Strickland* commands that petitioners "affirmatively prove prejudice." *Strickland*, 466 U.S. at 693. For that reason, "allegations about possible testimony that might have been offered by a witness who was not called are viewed by the courts with great caution." *Winborn v. United States*, No. 13CV14257, 2014 WL 1683280, at *3 (E.D. Mich. Apr. 29, 2014) (citing *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002); *United States v. Luciano*, 158 F.3d 655, 660 (2nd Cir. 1998)), *aff'd*, 602 Fed. Appx. 298 (6th Cir. 2015). *See also Clark v. Waller*, 490 F.3d 551, 558 (6th Cir. 2007), *cert. denied*, 552 U.S. 1030 (2007)

17

(finding no prejudice under *Strickland* where petitioner offered "nothing more than speculation" about how an uncalled witness would have testified).

Phillips also argues in his amended traverse that he is entitled to relief for the ineffective assistance of his trial counsel under the harmless-error standard of *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993). *See* R. 55, PageID #: 2320-2322. The Sixth Circuit has stated, however, that "[t]he prejudice prong of the ineffective assistance analysis subsumes the *Brecht* harmless-error review." *Hardy v. Rivard*, No. 16-1133, 2016 WL 4395354, at *2 (6th Cir. Aug. 18, 2016), *cert. denied*, 137 S. Ct. 2275 (2017) (quoting *Hall v. Vasbinder*, 563 F.3d 222, 236 (6th Cir. 2009); *see also Janosky v. St. Amand*, 594 F.3d 39, 47 (1st Cir. 2010) (citing *Hall*). The court, therefore, will not address that argument.

Phillips has failed to demonstrate that the state court's application of *Strickland* to the facts of this case was objectively unreasonable. *Washington*, 228 F.3d at 702. More importantly, Phillips has not demonstrated that the ruling of the state court "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103; *see also Montgomery*, 654 F.3d at 676. The petition should not be granted on the basis of the first ground.

## IV. SUFFICIENCY OF THE EVIDENCE

The fourth ground of the amended petition is: "The jury's verdict is against the sufficiency and manifest weight of the evidence presented at trial." (R. 10,

18

PageID #: 49; R. 10-3, PageID #: 65.)  Only the sufficiency of the evidence claim

remains, following the previous Memorandum and Order.  (R. 38, PageID #: 1204.)

The claim was presented on direct appeal, with Phillips arguing that two of

the key testifying witnesses were not credible, and that there was a "complete lack

of physical evidence" to support his convictions.  (R. 13-1, RX 22, PageID #: 222-

231.)  The court of appeals ruled on the sufficiency claim as follows:

> In reviewing a claim of insufficient evidence, "[t]he relevant inquiry is
> whether, after viewing the evidence in a light most favorable to the
> prosecution, any rational trier of fact could have found the essential
> elements of the crime proven beyond a reasonable doubt."  *State v.
> Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the
> syllabus.
>
> * * * * *
>
> Based on the arguments in the briefs, we will focus on the two most
> serious charges against appellant.  He was convicted of aggravated
> murder, R.C. 2903.01(B), which provides that "[n]o person shall
> purposely cause the death of another ... while committing or
> attempting to commit, or while fleeing immediately after committing
> or attempting to commit ... aggravated robbery and/or aggravated
> burglary." Appellant was further convicted of aggravated robbery
> under R.C. 2911.01(A)(3).  That statute provides that "[n]o person, in
> attempting or committing a theft offense, as defined in section 2913.01
> of the Revised code, or in fleeing immediately after the attempt or
> offense, shall ... [i]nflict, or attempt to inflict, serious physical harm on
> another.
>
> The record reveals that Leeson was observed playing pool at the Elks
> Club until about 10:00 PM on the evening of March 10, 2010.
> Although at trial the coroner was unable to set forth an estimated time
> of death for Leeson, police detectives theorized that Leeson was killed
> between 10:52 PM and 11:52 PM on March 10, 2010.  Two of Leeson's
> neighbors, Kevin Kline and Jennifer Hall, both heard the sound of a
> house door slamming at about 11 PM.  Hall also saw Leeson's Chrysler
> being abruptly driven from the residence that night, although Hall
> could not see the driver at the time.  Cell tower analysis indicated that

19

appellant's cell phone was used at least twice within a 2.8 mile radius of Leeson's residence on the night of March 10, 2010.

In addition, drug dealer Waylon Hillman and his girlfriend, Kristen Carli, testified that appellant sold them two TVs, in exchange for crack cocaine, early the next morning, March 11, 2010.  Carli later pawned one of the TVs in Alliance.  Detectives were able to trace both TVs back to Leeson's house.  Carli also witnessed appellant in possession of and later setting fire to the interior of Leeson's Chrysler in Lexington Township on the morning of March 11, 2011.

Appellant correctly notes that the State did not produce any forensic or physical evidence linking appellant to the scene of Leeson's murder. No blood or DNA from Leeson was linked to appellant's person or clothing.  Likewise, no DNA from appellant was found on Leeson, including any scrapings from under his fingernails.  Although the perpetrator apparently spread bleach and ammonia around the scene and Leeson's body as a means of destroying evidence, no evidence was presented at trial that appellant, when taken into custody, smelled of those chemicals or that he had traces on his person.  Finally, no eyewitnesses positively put appellant at or inside Leeson's residence on the night of the killing, although two of appellant's housemates, Rusty Inherst and Billy Jo Orzo, recalled hearing him come home about 4 AM on March 11, 2011.

Neither the fact of Leeson's death as a homicide nor the lack of physical evidence at the scene is in serious dispute in this appeal. Thus, the "sufficiency" portion of this assignment of error boils down to the nature of the evidence pointing to appellant's identity as the purposeful murderer and robber.

It is well-established in Ohio that circumstantial evidence has the same probative value as direct evidence.  *See, e.g., State v. Pryor*, Stark App.No.2007CA00166, 2008-Ohio-1249, ¶ 34, citing *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E .2d 492.  Courts must periodically be on guard against what some researchers have labeled the "CSI effect," a theory which posits that jurors who are familiar with forensic science techniques via television and other media will hold prosecutors to an unreasonably high standard of proof.  *See, e.g., Commonwealth v. Seng* (2010), 456 Mass. 490, 503, 924 N.E.2d 285.  Furthermore, because defendants may often deny having a purpose to kill, Ohio law recognizes that purpose can be determined from the surrounding facts

20

and circumstances.  *See State v. Eley*, 77 Ohio St.3d 174,180, 1996-Ohio-323.

The record in this case reveals overwhelming evidence that appellant was in possession of Leeson's Chrysler and two TVs from Leeson's house the morning after Leeson was killed.  Appellant was seen "torching" the Chrysler, creating an inference that he was trying to destroy evidence.  After this, appellant got in the passenger seat of Carli's car, telling Carli she "might hear some bad things," and not to start talking about something "you don't know about."  Tr. at 164, 186. Evidence was also presented of appellant's jealousy over Tammie Goodwin, who periodically stayed with Leeson and maintained a sexual relationship with him.  Appellant's jealousy over Goodwin was evinced by a letter dated the day before the killing, in which appellant told another of Goodwin's boyfriends, prison inmate Mike Stillion, that Goodwin was his and Stillion should leave her alone, claiming to be "one of the baddest motherfuckers with my hands you'll ever know." Furthermore, Beth Ann Pryor, a long-time friend of appellant, had spoken to appellant a few weeks before the killing, at which time appellant told her he was aware that Leeson always had "a pocketful of money on Friday nights" and that he was going to "rob the old man." Tr. at 120-121.

Upon review of the aforesaid, we find sufficient circumstantial evidence existed for reasonable fact finders to convict on the aggravated murder, aggravated robbery, and remaining charges (aggravated burglary, tampering with evidence, and arson) against appellant.  The convictions were supported by the sufficiency of the evidence.

(R. 13-1, RX 2, PageID #: 142-145; *Phillips*, 2011 WL 6655887, at *7-*9.)

The state court of appeals did not rely on federal law in ruling on Phillips' sufficiency of the evidence claim but rather relied on state cases, including *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), which followed the sufficiency of evidence standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979).  (R. 13-1, RX 2, PageID #: 142; *Phillips*, 2011 WL 6655887, at *7.)  Thus, the issue is whether the state court decision was an "unreasonable application" of clearly established

21

federal law; in other words, whether the state court identified the correct governing legal principle from Supreme Court decisions, and did it unreasonably apply that principle to the facts of Phillips' case. *Williams*, 529 U.S. at 410-412.

Under Supreme Court precedent, a sufficiency of the evidence claim is reviewed by determining whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *see also Cavazos v. Smith*, 565 U.S. 1, 7 (2011) (per curiam); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir.) (en banc), *cert. denied*, 496 U.S. 929 (1990). As noted above, this was the standard applied by the state appellate court. (R. 13-1, RX 2, PageID #: 142; *Phillips*, 2011 WL 6655887, at *7.) Thus, the state court identified the correct governing legal principle from *Jackson v. Virginia*.

Under *Jackson*, the habeas court does not make its own subjective determination of guilt or innocence. *Russell v. Anderson*, No. 1:07CV3434, 2008 WL 4534144, at *3 (N.D. Ohio Oct. 6, 2008) (citing *Herrera v. Collins*, 506 U.S. 390, 402 (1993)); *Talley v. Hageman*, 619 F.Supp.2d 407, 416 (N.D. Ohio 2008) (citing *Herrera*). This court does not weigh the evidence, evaluate the credibility of witnesses, or substitute its judgment for that of the jury. *White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009), *cert. denied*, 562 U.S. 858 (2010) (quoting *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009)); *Dover v. Warden, Belmont Corr. Inst.*, No. 5:08CV2130, 2009 WL 1940728, at *14 (N.D. Ohio July 2, 2009).

The Supreme Court has emphasized that "it is the responsibility of the jury — not the court — to decide what conclusions should be drawn from evidence admitted at trial." *Cavazos*, 565 U.S. at 2.  The Court stressed that *Jackson* "unambiguously instructs that a reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Cavazos*, 565 U.S. at 7 (quoting *Jackson*, 443 U.S. at 326).  "A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam) (quoting *Cavazos*).

On habeas review, "the *Jackson v. Virginia* standard is so demanding that '[a] defendant who challenges the sufficiency of the evidence to sustain his conviction faces a nearly insurmountable hurdle.'" *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2011) (en banc), *cert. denied*, 566 U.S. 947 (2012) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).  The Supreme Court has affirmed that "*Jackson* claims face a high bar in federal habeas proceedings." *Coleman v. Johnson*, 566 U.S. at 651.

A sufficiency of the evidence claim must be addressed "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir.), *cert. denied*, 537 U.S. 980 (2002) (quoting *Jackson*, 443 U.S. at 324 n.16).  Thus, the federal court must look to state

23

law to determine the elements of the crime. *Cameron v. Birkett*, 348 F.Supp.2d 825, 838-839 (E.D. Mich. 2004) (quoting *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999)).  As set forth by the state court, the charge of Aggravated Murder is codified in Ohio Revised Code 2903.01(B), and reads, "No person shall purposely cause the death of another . . . while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit . .  aggravated robbery and/or aggravated burglary."  (R. 13-1, RX 2, PageID #: 142-143; *Phillips*, 2011 WL 6655887, at *7, quoting Ohio Rev. Code § 2903.01(B).)  The charge of Aggravated Robbery is codified in Ohio Revised Code 2911.01(A)(3), and reads, "No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised code, or in fleeing immediately after the attempt or offense, shall . . . [i]nflict, or attempt to inflict, serious physical harm on another."  (R. 13-1, RX 2, PageID #: 143; *Phillips*, 2011 WL 6655887, at *7, quoting Ohio Rev. Code § 2911.01(A)(3).)

After reviewing the trial evidence, the state appellate court found the convictions were supported by the sufficiency of the evidence because "sufficient circumstantial evidence existed for reasonable fact finders to convict on the aggravated murder, aggravated robbery, and remaining charges (aggravated burglary, tampering with evidence, and arson) against appellant."  (R. 13-1, RX 2, PageID #: 145; *Phillips*, 2011 WL 6655887, at *9.)  Circumstantial evidence that the jury finds convincing may support a guilty verdict. *United States v. Garcia*, 758 F.3d 714, 718 (6th Cir.), *cert. denied*, 135 S. Ct. 498 (2014) ("Circumstantial

24

evidence alone is sufficient to sustain a conviction"); *United States v. White*, 932 F.2d 588, 590 (6th Cir. 1991) (circumstantial evidence may support guilty verdict, even if such evidence is inconclusive).  *See also Richter*, 562 U.S. at 113; *Jackson*, 443 U.S. at 324-325.

Although Phillips challenges the sufficiency of the evidence, he has not identified any specific elements of the crime(s) that the jury convicted him of committing that he contends the State failed to satisfy.  *See generally* R. 55, PageID #: 2327-2339.  Instead, Phillips contends generally that two of the key testifying witnesses were not credible (*id.* at PageID #: 2329-2334), and that there was a "complete lack of physical evidence" to support his convictions (*id.* at PageID #: 2328-2329, 2336-2337).  But as set forth above, circumstantial evidence which the jury finds convincing is sufficient to support a guilty verdict.  *Garcia*, 758 F.3d at 718; *White*, 932 F.2d at 590.

Finally, the testimony of the two witnesses whose credibility Phillips attacks was subject to cross-examination at trial.  (R. 43-1, tr., PageID #: 1488-1497 (Hillman); R. 43-2, tr., PageID #: 1676-1690 (Carli).)  In addition, defense counsel drew attention to the alleged weaknesses in their testimony at trial, both during counsel's opening statement (R. 43-1, tr., PageID #: 1274-1279; *see, e.g.*, R. 43-1, tr., PageID #: 1274 ("they were suspects for the actual crime"), and during closing argument (R. 43-4, tr., PageID #: 2142-2143, 2149-2150).  The jury had the opportunity to consider their testimony, counsel's arguments, and the evidence

25

presented at trial.  The jury evidently found their testimony credible, or at least, did not find that their testimony weighed against a conviction.

The Supreme Court has instructed that, on habeas review, this court should not second-guess the jury, whose responsibility it is "to decide what conclusions should be drawn from evidence admitted at trial." *Cavazos*, 565 U.S. at 2.  This court does not make its own subjective determination of guilt or innocence.  *Russell*, 2008 WL 4534144, at *3 (citing *Herrera*, 506 U.S. at 402); *Talley*, 619 F.Supp.2d at 416 (citing *Herrera*).  Moreover, this court cannot weigh the evidence, evaluate the credibility of witnesses, or substitute its judgment for that of the jury.  *White*, 602 F.3d at 710 (quoting *Brown*, 567 F.3d at 205).

Phillips briefly raises another issue in his discussion of his sufficiency claim, asserting that evidence was improperly admitted ("in the form of an undelivered letter"), thus, "improperly used and insufficient to garner his conviction."  (R. 55, PageID #: 2337.)  This argument was raised before the state court as an evidentiary issue, but not as an argument regarding the sufficiency of the evidence.  (R. 13-1, RX 22, PageID #: 198, 215-219; R. 13-1, RX 2, PageID #: 138-140; *Phillips*, 2011 WL 6655887, at *4-*6.)  As such, it is not a proper argument here.

Having reviewed the decision of the state court and the parties' respective filings, this court cannot find that the state court's decision is an unreasonable application of *Jackson v. Virginia*.  *See generally Cavazos*, 565 U.S. at 6-7; *Jackson*, 443 U.S. at 319.  The court cannot find that "no rational trier of fact could have

26

agreed with the jury." *Coleman*, 566 U.S. at 651  (quoting *Cavazos*).  The petition should not be granted on the basis of the fourth ground.

## VI.  CONCLUSION

The undersigned recommends that Ground One (alleging ineffective assistance of counsel) and the portion of Ground Four alleging the insufficiency of the evidence, the only remaining grounds of the petition, be denied, for the reasons set forth above.

<u>s/ David A. Ruiz</u>
David A. Ruiz
United States Magistrate Judge


Date:  <u>August 20, 2018</u>

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *see also United States v. Walter*s, 638 F.2d 947 (6th Cir. 1981).